IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DORIS M.,                                    )
                                             )
        Plaintiff,                           )
                                             )
v.                                           )        CASE NO. 3:24-cv-447-JTA
                                             )        (WO)
FRANK J. BISIGNANO, Commissioner             )
of Social Security,                          )
                                             )
        Defendant.                           )

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Doris M. brings this action to review a final

decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The

Commissioner denied Plaintiff's application for Supplemental Security Income ("SSI")

and claim for a period of disability and Disability Insurance Benefits ("DIB"). The Court

construes Plaintiff's memorandum in support of her Complaint (Doc. No. 15) as a motion

for summary judgment and the Commissioner's memorandum in support of the

Commissioner's decision as a motion for summary judgment (Doc. No. 18). The parties

have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to

28 U.S.C. § 636(c). (Docs. No. 13, 14.)

Based upon a review of the record and the briefs submitted by the parties, the Court

finds Plaintiff's motion for summary judgment is due to be GRANTED, the

---

[1] Document numbers as they appear on the docket sheet are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be DENIED, the decision of the Commissioner is due to be REVERSED, and this matter is due to be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    PROCEDURAL HISTORY AND FACTS

Plaintiff is an adult[2] female with a high school education and past relevant work as a machine operator II, hot knife cutter, hand packager, motor vehicle assembler, cook, and nursery school attendant. (R. 217, 407–14, 431–33, 646.)[3] She alleged a disability onset date of October 6, 2021. (R. 596, 602.) Plaintiff alleged disability due to cervical degenerative disc disease, right arm radiculopathy, bilateral knee degenerative joint disease, iron deficiency anemia, hypertension, "coronary artery disease s/p PCI and 2 stents," type II diabetes, hyperlipidemia, asthma, gastroesophageal reflux disease, menorrhagia, hyponatremia, diastolic heart failure, diastolic dysfunction, hypothyroidism, hyperglycemia, major depressive disorder, bipolar disorder, trauma and stressor related disorder, anxiety, bilateral hearing loss due to cerumen impaction, unipolar depression, psychoticism, right arm pain, memory change, and uterine fibroids with hysterectomy. (R. 740–41.)

In December 2021, Plaintiff filed a Title II application (42 U.S.C. §§ 401, *et seq*.) for a period of disability and DIB, and a Title XVI application (42 U.S.C. §§ 1381, *et seq*.)

---

[2] Plaintiff was 50 years old at the alleged disability onset date. (R. 595–96, 601–02.)

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 7.)

for SSI. (R. 595–617.) The applications were denied initially and upon reconsideration. (R. 465–66, 513–14.)

The Administrative Law Judge ("ALJ") held an administrative hearing on September 18, 2023. (R. 398-440.) During the administrative hearing, Plaintiff's attorney obtained the ALJ's permission to file a post-hearing brief. (R. 402–404, 438–39.) On September 20, 2023,[4] Plaintiff's attorney submitted a letter brief containing her theory of the case. At the close of the letter brief, Plaintiff provided the ALJ the following notice of outstanding records and upcoming medical appointments:

> The last treatment visit from Pinnacle Cardiovascular Associates was submitted today. We did get a response from the Orthop[a]edic Clinic that they would not complete the residual functional capacity questionnaire. Thus, the only outstanding record is a visit from Stopwatch Urgent Care. Today, we were informed that the record should be supplied to us by Friday, September 22, 2023. We will submit this record as soon as we receive it.
>
> After the hearing, [Plaintiff] informed me that she has an appointment to have her vision tested on September 28, 2023. Her follow up appointment with the Orthop[a]edic Clinic is scheduled for October 6, 2023. She also has an appointment with a neurologist on November 28, 2023[,] to evaluate [] the memory difficulty she testified to. While we are not asking Your Honor to hold the record open for these records, should Your Honor be unable to grant a fully favorable decision on the record as it stands, we will be happy to obtain the future records if needed.

(R. 741–42.)

In a decision dated January 25, 2024, the ALJ denied Plaintiff's request for benefits. (R. 203-19.) Thereafter, Plaintiff requested several extensions of time to submit additional medical records to the Appeals Council, which the Appeals Council granted. (R. 152–60,

---

[4] Plaintiff's letter brief contains a scrivener's error. Though dated September 4, 2023, it was completed and submitted on September 20, 2023. (Doc. No. 15 at 10–11 & n.11.)

182–86.) The Appeals Council did not rule on her last request for an extension of time, which sought an extension of the final May 2, 2024 submission deadline. (R. 152.) Both before and after the May 2, 2024 deadline, Plaintiff submitted additional medical records to the Appeals Council related to treatment she received after the date of the ALJ's hearing. (R. 8-151, 161–181, 189–99, 226–57, 258–397, 441-48.)

On June 17, 2024, the Appeals Council denied review.  (R. 1.) On July 26, 2024, Plaintiff filed this action seeking review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 15, 18, 19.) This matter is ripe for review.

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.[5] 42 U.S.C. § 405(g). *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) ("In Social Security appeals, we must determine whether the Commissioner's decision is "'supported by substantial evidence and based on proper legal standards.'" (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004))). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." (*Id.*) When

---

[5] The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

reviewing a challenge to the Commissioner's determination of fact, the reviewing court "will affirm the Commissioner's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). However, the court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see Winschel*, 631 F.3d at 1178 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." (quotation and brackets omitted)).

"[T]he Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*." *Fleeton v. O'Malley*, No. 2:23-cv-62-JTA, 2024 WL 235216, at *1 (M.D. Ala. Jan. 22, 2024) (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007)). When, upon request for review of the ALJ's decision, the Appeals Council refuses to consider new evidence on grounds that the evidence does not meet the legal criteria[6] for consideration, the Appeals Council's determination is a legal one subject to *de novo* review. *Dubose v. Comm'r of Soc. Sec.*, No. 24-13554, 2025 WL 2529598, at *3 (11th Cir. Sept. 3, 2025); *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

---

[6] The Appeals Council must review a case if (1) "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision," and (2) the claimant shows good cause for not timely submitting the material to the ALJ. 20 C.F.R. §§ 404.970(a)(5),(b); 20 C.F.R. § 416.1470(a)(5)(b) (same).

### III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for DIB and SSI must prove that she is disabled.[7] *See* 20 C.F.R. §§ 404.1505, 416.912(a), 416.920(a)(4). The Act defines "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 405.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. The ALJ must determine (1) whether Plaintiff is currently performing substantial gainful activity; (2) whether Plaintiff has a severe impairment or combination of impairments; (3) whether the severe impairment meets or exceeds an impairment in the Listings of Impairments; (4) whether the Plaintiff can perform her past relevant work despite the impairment; and (5) whether Plaintiff can perform other jobs that exist in the national economy[8] given her residual functional capacity ("RFC"), age, education, and work experience. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1101–02 (11th Cir. 2021).[9] Plaintiff has the burden of proof on the first four steps and the Commissioner carries the burden on the fifth step. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279

---

[7] Although DIB and SSI are separate programs, the standards for determining disability are identical. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

[8] To determine the existence of other jobs which the claimant can perform, the ALJ may rely on the testimony of a vocational expert ("VE"). *Winschel*, 631 F.3d at 1180.

[9] *Simon* was superseded on other grounds by 2017 regulations abrogating the treating physician rule. *See Harner v. Soc. Sec. Admin., Comm'r,* 38 F.4th 892, 894 (11th Cir. 2022).

(11th Cir. 2020). If the Commissioner carries the burden at the fifth step, the burden shifts back to Plaintiff to prove she is unable to perform the jobs suggested. *Id*.

## IV.   ADMINISTRATIVE DECISION

A.   The ALJ's Decision

Within the structure of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 205.) The ALJ determined Plaintiff suffers from the following severe impairments that significantly limit her ability to perform basic work activities: cervical disc disease and right radiculopathy, degenerative joint disease of the knees, diabetes mellitus, hypertension, and anemia. (R. 206.) The ALJ determined Plaintiff's "coronary artery disease, hyperlipidemia, hypothyroidism, history of asthma and allergies, and uterine fibroids" were not severe impairments because they did not, singly or in combination, "cause more than minimal limitation in the ability to perform basic work activities." (*Id*.) The ALJ also made the following determination regarding Plaintiff's mental impairments:

> [Plaintiff's] medically determinable mental impairments of depressive disorder with reported psychotic features and anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere.

(*Id*.)

Further, the ALJ found that "[a]ny other medically determinable impairment not specifically mentioned in this decision, but mentioned briefly in the record, is not considered severe" because "[a]ny medically determinable impairment not specifically

7

mentioned would not have caused, or would not be expected to cause, more than minimal limitation in the ability to work for any continuous 12-month period since the alleged onset date." (R. 206.)

At the next step of the sequential evaluation process, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 211–13.)

Moving to the next step of the analysis, after considering the record as it existed at the time of the decision,[10] the ALJ determined Plaintiff has the RFC to perform

> less than the full range of "light work," as that term is otherwise defined in 20 C.F.R. 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. She can push and pull within those same exertional limits. She can stand or walk for about six hours altogether and she can sit for at least six hours out of an eight-hour workday. She can only occasionally reach overhead, but can otherwise perform fine and gross manipulation on no greater than a frequent basis. She can occasionally stoop, crouch, kneel, and climb ramps and stairs. She can perform tasks not involving crawling or the climbing of ladders, ropes, or scaffolding. She can perform tasks not involving operation of vibrating tools or equipment. She can perform tasks not involving exposure to workplace hazards such as unprotected heights or dangerous moving machinery.

(R. 213–17.)

In determining Plaintiff's RFC, the ALJ found

> [Plaintiff]'s medically determinable impairments could possibly be expected to cause to some degree the symptoms alleged. However, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

---

[10] The ALJ considered medical records Plaintiff submitted between the date of the hearing and the date the ALJ issued his decision. (*See*, *e.g.*, R. 216.)

(R. 214.)

The ALJ found Plaintiff cannot perform her past relevant work, but that a significant number of jobs exist in the national economy Plaintiff can perform. (R. 217–19.) Consequently, the ALJ concluded Plaintiff "has not been under a disability, as defined in the Social Security Act, from October 6, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." (R. 219.)

B.      The Appeals Council's Decision

In seeking review from the Appeals Council, Plaintiff argued new medical records warranted reconsideration. (R. 8–199.) After considering only the new medical records Plaintiff submitted on or before the May 2, 2024 submission deadline,[11] the Appeals Council "found no reason under [the Appeals Council's] rules to review the Administrative Law Judge's decision." (R. 2.) With respect to new records of Plaintiff's medical treatment occurring between the September 18, 2023 hearing and the ALJ's January 25, 2024 decision, the Appeals Council stated as follows:

> You submitted evidence from Weeks Cataract and Eye Center (5 pages), dated November 2, 2023, Neurology Center of East Alabama (3 pages), dated October 5, 2023, Pinnacle Cardiovascular Associates (3 pages), dated January 17, 2024, Retina Specialists of Alabama (24 pages), dated November 17, 2023, to January 10, 2024, [and] East Alabama Mental Health (19 pages), dated October 18, 2023, to January 16, 2024. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

---

[11] The Appeals Council's omission of any reference to untimely-filed evidence "does not, in and of itself, demand reversal and remand." *Spurgeon v. Soc. Sec. Admin., Comm'r*, No. 22-10999, 2024 WL 1395258, at *6 (11th Cir. 2024).

9

(R. 2.)

With respect to new records of medical treatment occurring after the ALJ issued his

January 25, 2024 opinion, the Appeals Council Stated:

> You submitted evidence from East Alabama Mental Health (7 pages), dated February 20, 2024, to February 29, 2024, East Alabama Mental Health (21 pages), dated March 19, 2024, to May 3, 2024, Dr. Dooley of the Orthopaedic Clinic (2 pages), dated February 19, 2024, and Orthopaedic Clinic (2 pages), dated February 19, 2024. [sic] The Administrative Law Judge decided your case through January 25, 2024. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 25, 2024.

(*Id.*)

## V.    DISCUSSION

A.    Issues Presented

Plaintiff presents the following two issues for review:

1.    Whether the Appeals Council erred in failing to remand Plaintiff's case to the ALJ on the basis of new and material evidence.

2.    Whether the ALJ failed to properly account for or analyze the findings from the Paragraph B criteria for evaluating mental disorders at step 2-3 in determining Plaintiff's RFC.

(Doc. No. 15 at 1.)

Because the Court determines remand is warranted on the first issue, it will pretermit

discussion of the second.

B.    Timely-Submitted[12] New Medical Records from East Alabama Neurology Clinic, Weeks Cataract and Eye Center, and Retina Specialists of Alabama Warrant Remand

"A claimant is allowed to present new evidence at each stage of the administrative process, including before the Appeals Council." *Calloway v. Kijakazi*, No. 3:20-cv-228-JTA, 2021 WL 5227068, at *4 (M.D. Ala. Nov. 8, 2021) (citing 20 C.F.R. § 404.900(b)). "'The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (quoting *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 862–63 (11th Cir. 2019) (quoting in turn *Ingram*, 496 F.3d at 1261)). "'When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is . . . subject to judicial review because it amounts to an error of law.'"[13] *Id.* (quoting *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998)). "To succeed on a claim that remand is appropriate, [Plaintiff] must show that (1) new, noncumulative,"

---

[12] In addition to seeking remand based on evidence that was properly before the Appeals Council, Plaintiff also seeks remand for consideration of evidence she submitted to the Appeals Council after its May 2, 2024 deadline. When determining whether to remand for consideration of new evidence that existed at the time of the Appeals Council's decision, the analysis differs based on whether the evidence was properly before the Appeals Council. *See Spurgeon*, 2024 WL 1395258, at *5–6. Because Plaintiff is entitled to remand for consideration of some of the timely-submitted evidence, and the parties failed to recognize and apply the differing standards with respect to evidence not properly before the Appeals Council, the Court will pretermit discussion of all evidence that was not properly before the Appeals Council.

[13] As with other questions of law, the Court reviews *de novo* the Appeals Council's refusal to consider additional evidence timely submitted by the claimant. *Ingram*, 496 F.3d at 1260; *Washington*, 806 F.3d at 1320–21.

chronologically relevant "evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Id.* (citing *Falge*, 150 F. 3d at 1323); *see also* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

Of the records underlying Plaintiff's request for remand, the following were timely submitted to the Appeals Council.

- An October 5, 2023 record from East Alabama Neurology Clinic, where Plaintiff sought treatment for memory concerns. (R. 396-97.) She was diagnosed with diabetes mellitus type II, essential hypertension, hyperlipidemia, chronic kidney disease, and cognitive decline. (*Id.*) The doctor noted Plaintiff has "multiple vascular risk factors including very poorly controlled [diabetes mellitus II]." (R. 396.) The doctor also discussed with Plaintiff "pseudodementia due to underlying medical/psychological status." (*Id.*) The doctor noted Plaintiff "is a good historian, drives, keeps up with her ADLs and meds. Just needs better management." (*Id.*) The doctor noted Plaintiff was "surprised to learn that her DMII isn't controlled, as she's been taking her metformin and drinking water and diet drinks." (*Id.*) The doctor scheduled Plaintiff for an MRI "for vascular baseline." (*Id.*) Plaintiff submitted these records on March 7, 2024. (R. 395.)

- Medical records from Weeks Cataract and Eye Center dated November 2, 2023, for complaints of vision that had been gradually worsening over the last few months, making her vision "pretty blurry" and reading difficult. (R. 254–57.) Plaintiff was diagnosed with proliferative diabetic retinopathy in the left eye, nuclear sclerosis, combined senile cataracts in both eyes, and type II diabetes with ocular complications. (R. 256.) She was referred to a retina specialist for evaluation and management. (*Id.*) Plaintiff submitted this record on March 12, 2024. (R. 253.)

- Medical records from Retina Specialists of Alabama dated November 17, 2023 through January 10, 2024, where Plaintiff sought treatment (including laser surgery) for moderately severe blurred vision, proliferative diabetic retinopathy in both eyes, retinal detachment, and insulin-dependent type II diabetes with ocular complications. (R. 230–52.) In a follow-up for the laser surgery, the treating physician noted "[t]he left eye will need more laser at some point." (R. 231.) Plaintiff submitted this record on March 4, 2024. (R. 229.)

12

- Medical records dated January 17, 2024, from Pinnacle Cardiovascular Associates, where Plaintiff sought treatment for coronary artery disease, hypertension, hyperlipidemia, and type II diabetes. Plaintiff submitted this evidence on March 7, 2024. (R. 227–28.)[14]

- Medical records from East Alabama Mental Health dated October 18, 2023, through February 29, 2024. (R.189–95, 259–76.) Plaintiff sought continuing treatment for numerous issues including major depressive disorder, paranoid thoughts, audio verbal hallucinations, experiences such as seeing shadows and hearing her name called, disturbed sleep and nightmares, racing and intrusive thoughts, and feeling someone was standing over her like a shadow. (*Id*.) Plaintiff submitted these records on March 1, 2024. (R. 189, 258.)[15]

- February 19, 2024 records from the Orthopaedic Clinic consisting of a prescription for a cane stating "length of need: 99 months" and doctor's note stating: "To whom it may concern, [Plaintiff] needs to [be] housed in a ground-level apartment. Her mobility is considerably impaired due to an orthopaedic condition, for which she is under my care[]." (R. 196–99.) Plaintiff submitted these records on February 28, 2024. (R. 196, 198.)[16]

---

[14] The medical records dated January 17, 2024, from Pinnacle Cardiovascular Associates do not warrant remand. Those records reflect ongoing treatment of Plaintiff's cardiovascular conditions. (R. 227–28.) Plaintiff does not explain why these records are noncumulative or why they could reasonably be expected to alter the outcome of the ALJ's decision. *See Washington*, 806 F.3d at 1321 n.6, 1323 n.9 (noting that "cumulative evidence [was] not new," nor was it material because it could not reasonably be expected to change the outcome of an ALJ's decision); *see also Dubose*, 2025 WL 2529598, at *6 (holding cumulative evidence was immaterial because it could not reasonably have been expected to alter the administrative outcome). Consequently, Plaintiff has not demonstrated she is entitled to remand based on the Appeals Council's refusal to consider the January 17, 2024 medical records from Pinnacle Cardiovascular Associates.

[15] The medical records from East Alabama Mental Health dated October 18, 2023, through January 17, 2024, do not warrant remand. Those records reflect ongoing treatment of Plaintiff's psychological conditions. (R. 189–95, 259–276.) Plaintiff does not explain why these records are noncumulative or why they could reasonably be expected to alter the outcome of the ALJ's decision. *See Washington*, 806 F.3d at 1321 n.6, 1323 n.9; *Dubose*, 2025 WL 2529598, at *6. Consequently, Plaintiff is not entitled to remand for review of the East Alabama Mental Health records dated October 18, 2023, through January 17, 2024.

[16] The February 19, 2024 records from the Orthopaedic Clinic do not warrant remand. Those records concern Plaintiff's orthopaedic conditions, which the ALJ found to be severe impairments. (R. 740–41, 196–99.) The Appeals Council determined those records "do[] not relate to the period at issue." (R. 2.) *See* 20 C.F.R. §§ 404.970(a)(5) (providing that, to justify review by the Appeals Council, new evidence must "relate[] to the period on or before the date of the hearing decision"); 20 C.F.R. § 416.1470(a)(5) (same). On appeal, Plaintiff makes no effort to demonstrate the

As to the first three sets of medical records[17] listed above, the Appeals Council "did not exhibit the evidence" because it "d[id] not show a reasonable probability that it would change the outcome of the decision." (R. 2.) For the reasons stated below, the first three sets of medical records warrant remand.

1.  The First Three Sets of Medical Records Are New and Chronologically Relevant

Plaintiff argues the first three sets of medical records are new and chronologically relevant. Generally, evidence presented to the Appeals Council is new if "it was not previously before the ALJ." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Yet, "cumulative evidence is not new." *Washington*, 806 F.3d at 1321 n.6 (citation omitted). Noncumulative evidence includes "evidence of a condition that existed prior to the ALJ's hearing, but was not discovered until afterward." *Enix v. Comm'r of Soc. Sec.*, 461 F. App'x

February 19, 2024 records from the Orthopaedic Clinic, which postdate the ALJ's decision, are chronologically relevant. Specifically, Plaintiff has not shown these records establish more than the worsening of her orthopedic conditions after the date of the ALJ's decision or that they directly reference the time period prior to the ALJ's decision. *See Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966, 967–68 (11th Cir. 2018) ("'[A] worsening of the condition or onset of a new condition after the date of the hearing decision' is an example of evidence that is not related to the period at issue.'" (citing HALLEX, I-3-3-6(B)(2), 1993 WL 643129)). Hence, Plaintiff is not entitled to remand for review of the February 19, 2024 records from the Orthopaedic Clinic. *Id.* (noting that, "if a claimant submits evidence to the Appeals Council that does not relate to the period on or before the date of the administrative law judge hearing decision," "[i]t is sufficient for the Appeals Council to state that the submitted records are about a later time and, therefore, do not affect the decision about whether a claimant was disabled at the time of the ALJ hearing").

[17] For clarity, the Court will refer to the following records as "the first three sets of medical evidence:" the October 5, 2023 medical records from East Alabama Neurology Clinic, the November 2, 2023 medical records from Weeks Cataract and Eye Center, and the medical records from Retina Specialists of Alabama dated November 17, 2023 through January 10, 2024.

861, 863 (11th Cir. 2012) (considering whether evidence warranted a sentence-six remand). Although new evidence by definition must not have been before the ALJ at the time of his decision, to be chronologically relevant, the evidence must still "relate[] to the period on or before the date of the ALJ's hearing decision." *Bailey v. Soc. Sec. Admin., Comm'r*, No. 22-11531, 2023 WL 4553880, at *1 (11th Cir. July 17, 2023) (citing *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018)); *see also* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5); *Ring*, 728 F. App'x at 967–68 (noting medical evidence regarding treatment occurring after the date of the ALJ's decision may be chronologically relevant if the medical records indicate they "were based on experiences that had occurred before the ALJ's decision" or "on a review of medical records from the period before the ALJ's decision").

Prior to and during the hearing, Plaintiff complained of memory difficulties, and it is undisputed Plaintiff has a significant impairment of diabetes mellitus. (R. 206–07, 404, 421–22.) Additionally, the evidence indicates Plaintiff suffered from diabetes-related gradual vision loss at the time of the hearing, although the condition was not diagnosed until it worsened a short time later.[18] On their face, the records from the first three sets of medical evidence include diagnoses and treatment related to those impairments, including diagnoses and treatment of cognitive decline, uncontrolled proliferative diabetic

---

[18] One and one-half months after the September 18, 2023 hearing, Plaintiff sought treatment for vision that had been "gradually" worsening over the "last few months." (R. 255.) According to her November 2, 2023 diagnosis, she was suffering from proliferative diabetic retinopathy in the left eye, nuclear sclerosis, combined senile cataracts in both eyes, and type II diabetes with ocular complications. (R. 256.)

15

retinopathy in both eyes, and insulin-dependent type II diabetes with ocular complications. (R. 230–52, 254–57, 396-97.) Hence, these records contain evidence regarding medical conditions that existed prior to the ALJ's hearing, but were not discovered until after the hearing. These records qualify as new, noncumulative evidence, and are relevant to the time period on or before the date of the ALJ's hearing. *Enix*, 461 F. App'x at 863.

2. The Records from East Alabama Neurology Clinic, Weeks Cataract and Eye Center, and Retina Specialists of Alabama Are Material

Plaintiff argues the first three sets of medical records are material. "Evidence is material if there is a reasonable probability . . . the evidence would change the administrative result."[19] *Bailey*, 4553880, at *1 (citing *Hargress*, 883 F.3d at 1308).

---

[19] Citing *Ingram*, 496 F.3d at 1266, the Commissioner erroneously states that, in determining whether the ALJ properly declined to deny review of new evidence "[a] court generally considers evidence submitted to the Appeals Council with the record as a whole to determine whether substantial evidence supports the ALJ's decision." (Doc. No. 18 at 4–5.) That approach may be relevant when reviewing the Appeals Council's conclusion, upon considering new evidence, that the new evidence does not render the ALJ's decision erroneous. *See Ingram*, 496 F.3d at 1266. Here, however, the Appeals Council concluded that, because the new evidence did not meet the requirements for consideration in the first place, it was not required to consider whether the new evidence rendered the ALJ's opinion erroneous or unsupported by substantial evidence. (R. 1-2 (("f[inding] no reason under our rules to review the [ALJ's] decision" because "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision").

The question before this Court is limited to whether the Appeals Council correctly declined to consider the new evidence. That inquiry requires the court to determine whether the new evidence is "reasonably probable" to have undermined the ALJ's decision—not whether, in light of the new evidence, the ALJ's decision would in fact be unsupported by substantial evidence. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5); *see Ingram*, 496 F.3d at 1265 (distinguishing a case in which "the Appeals Council . . . rejected newly proffered evidence and denied review"); *see also Ingram*, 496 F.3d at 1263 (rejecting Plaintiff's argument that the Appeals Council erred in failing to consider newly-presented evidence because the Appeals Council did consider the evidence). The Court notes that *Ingram* was decided in the context of a prior version of 20 C.F.R. § 404.970(a)(5), which differs somewhat from the standard currently stated in §§ 404.970(a)(5) and 416.1470(a)(5). *See* 52 Fed. Reg. 4001-01 (February 9, 1987), 1987 WL 125428 (20 C.F.R. § 404.970(b) and 20 C.F.R. § 416.1470(b), effective through January 17, 2017); *see also Ingram*, 496 F.3d at 1266-67 (citing

16

As previously noted, at the September 18, 2026 hearing Plaintiff complained of memory deficits. (R. 421–22.) At that time, none of those present at the hearing knew that, only three weeks later, she would be diagnosed with cognitive decline. (R. 396.) Additionally, the first three sets of medical records reveal that, at the time of the hearing, Plaintiff was experiencing gradually worsening vision loss that would soon be identified as the product of proliferative diabetic retinopathy in the left eye, nuclear sclerosis, combined senile cataracts in both eyes, and type II diabetes with ocular complications. (Doc. No. 255–56.)

Unaware of these present but soon-to-be diagnosed medical conditions, the ALJ found no severe or nonsevere vision-related impairments. (R. 205–06.) He also found no severe cognitive impairments. (*Id.*) Instead, in considering Plaintiff's reported memory difficulties, he associated those difficulties with Plaintiff's depression and found only a mild limitation in the area of understanding, remembering, and applying information. (R. 206–07.) Consequently, the ALJ included no vision-related, memory-related, or cognitive functional limitations in Plaintiff's RFC or in his questions to the VE. In so doing, the ALJ discounted Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [as] not entirely consistent with the medical evidence and other evidence in the record." (R. 213–14.)

The first three sets of medical evidence provide objective medical support for Plaintiff's subjective statements of memory and cognitive functioning problems, and they

---

20 C.F.R. § 404.970(b)). The standard applied by the Appeals Council and herein is the current, applicable standard. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

would have notified the ALJ of Plaintiff's vision-related diagnoses and cognitive decline. In turn, that information likely would have altered Plaintiff's RFC and the ALJ's hypothetical in Plaintiff's favor. Thus, there is a reasonable probability that, had the ALJ received and accepted the first three sets of evidence, the evidence would have changed the administrative result.[20] *See Hyde*, 823 F.2d at 459 ("[W]e conclude that Hyde has established that the evidence is 'material' in that there is a reasonable [probability] that the new evidence would change the administrative outcome. The new evidence provides objective medical support for Hyde's subjective complaints of pain and, if accepted, may warrant acceptance by the ALJ of these allegations of pain."); *see also Ross v. Comm'r, Soc. Sec. Admin.,* No. 21-13562, 2022 WL 3654820, at *2 (11th Cir. Aug. 25, 2022) ("An administrative law judge's assessment of a claimant's residual functional capacity must consider "all [of the claimant's] impairments, severe and non-severe" alike, as well as the 'claimant's medical condition taken as a whole.'" (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019)); *Chamblis v. O'Malley*, No. 2:22-cv-548-JTA, 2024 WL 1286201, at *6 (M.D. Ala. Mar. 26, 2024) ("'The Eleventh Circuit has held that an ALJ's hypothetical question must account for a claimant's limitations in concentration, persistence, and pace.'" (quoting *Reynolds v. Comm'r, Soc. Sec. Admin.*, No. 4:21-cv-

---

[20] To be considered disabling, Plaintiff's vision-related impairment need not have already lasted twelve months prior to the ALJ's decision. An impairment is disabling unless it has lasted <u>or can be expected to last</u> not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Commissioner argues briefly and conclusorily that, because Plaintiff's vision problems were diagnosed in October 2023 and the ALJ issued his decision only a few months later, the record fails to establish a vision related impairment that meets the twelve-month durational requirement. (Doc. No. 18 at 7.) The Court will not consider the Commissioner's threadbare, conclusory argument because it misconceives the applicable law and cites no supporting evidence regarding Plaintiff's prognosis.

01567-ACA, 2023 WL 401356, at *5 (N.D. Ala. Jan. 25, 2023) (citing in turn *Winschel*, 631 F.3d at 1180–81))). Therefore, the medical records of Plaintiff's cognitive decline and vision difficulties are material. *See Hyde*, 823 F.2d at 459 & n. 4 (concluding remand was warranted based on new evidence the claimant's prosthetic device was loose, which, "if accepted" provides "an objective medical explanation" for the claimant's previously unexplained complaints of pain in his hip and leg).

      3.      Plaintiff Has Shown Good Cause for Failing to Timely Submit to the ALJ the Records from East Alabama Neurology Clinic, Weeks Cataract and Eye Center, and Retina Specialists of Alabama

The Court next turns to whether Plaintiff had good cause for failing to submit to the ALJ the first three sets of medical evidence. Here, Plaintiff showed good cause[21] for not submitting the medical records prior to the hearing because those records did not exist until after the September 18, 2023 hearing. *Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986) ("Nonexistence of the evidence at the time of the administrative proceedings may constitute good cause."); *Calloway v. Kijakazi*, No. 3:20-cv-228-JTA, 2021 WL 5227068, at *5 (M.D. Ala. Nov. 8, 2021) ("[G]ood cause exists for the failure to submit the August 2019 letter to the ALJ because the letter did not exist at the time of the ALJ's hearing or decision."). Moreover, Plaintiff's vision problems became noticeable "a few months" before her November 2, 2023, appointment at Weeks Cataract and Eye Center. On

---

[21] The Appeals Council did not indicate whether it found good cause for Plaintiff's failure to submit the records prior to the hearing, or whether it simply declined to address that issue because it denied review on other grounds. Plaintiff does not argue the Appeals Council's silence on this issue constitutes either grounds for reversal or an implicit finding of good cause.

September 20, 2023, two days after the hearing, Plaintiff informed the ALJ she had scheduled a September 28, 2023 appointment "to have her vision tested," as well as a November 28, 2023 appointment to see a neurologist for her memory problems.[22] (R. 741–42.) Plaintiff also points out her history of poverty[23] and financial difficulties that made medical treatment inaccessible until she obtained health insurance five months prior to the hearing.[24] Under the circumstances, Plaintiff has demonstrated the timing of the treatment reflected in the first three sets of medical records constitutes an "unavoidable circumstance beyond [her] control" that, even with additional diligence, could not have allowed her to present the first three sets of medical records to the ALJ within the five days prior to the hearing. *See* 20 C.F.R. § 416.1470(b)(3); 20 C.F.R. § 404.970(b)(3) (same). Accordingly, Plaintiff had good cause for not timely submitting the first three sets of medical records to

---

[22] In fact, Plaintiff obtained an initial evaluation for her memory problems earlier than November 28, 2023, as reflected in the October 5, 2023 East Alabama Neurology clinic records. (R. 396.)

[23] For example, a December 28, 2021 treatment note from East Alabama Mental Health Center showed Plaintiff recently "lost her job and her trailer," requested housing support funds to help pay her power bill, lived in public housing, and "need[ed] basic items like a bed." (R. 1002.) East Alabama Mental Health Center treatment records from June and October 2022 noted Plaintiff could not afford to take her insulin. (R. 1115, 1178.) A treatment record from December 13, 2022 noted Plaintiff "was in an upbeat mood today" and "shared being excited regarding a church member donating her a 1999 SUV, just needs to purchase a tag, insurance, get oil change before driving it. Explored resources, family to assist with this matter." (R. 1189-90.) A February 7, 2023 treatment note shows her therapist "completed a housing support referral for funds to pay her gas bill in the [amount] of $66.46." (R. 1196.) A March 2023 report stated Plaintiff "voiced concerns of struggling with financial hardship" and "has exhausted her resources with family and friends." (R. 1202.)

[24] An East Alabama Medical Center treatment note from March 9, 2023 stated Plaintiff "has not taken [i]nsulin for over 3 months, due to not having any insurance. She has not been seen since 03/2022 . . . She reports that she has not had an [e]ndocrinology visit due [to] loss of insurance." (R. 1165–66.) An April 5, 2023 treatment record noted Plaintiff had "BCBS insurance" that "covers her medical needs." (R. 1215.)

the ALJ. The Commissioner does not argue otherwise.

4.      Plaintiff is Entitled to Reversal and Remand

Because the first three sets of medical records are new, noncumulative, chronically relevant, and material, and Plaintiff demonstrated good cause for her failure to submit them within five days prior to the ALJ's hearing, those records warrant reversal of the Commissioner's decision. Accordingly, Plaintiff is entitled to remand pursuant to sentence four of 42 U.S.C. § 405(g).

## VI.    CONCLUSION

For the reasons stated, the Court finds the Commissioner's decision is the product of an error of law. Therefore, it is ORDERED as follows:

1.      Plaintiff's motion for summary judgment (Doc. No. 15) is GRANTED.

2.      The Commissioner's motion for summary judgment (Doc. No. 18) is DENIED.

3.      This action is REVERSED and REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order.

A separate judgment will issue.

DONE this 29th day of June, 2026.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE

21